IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENISE COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-363-HE |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's applications for benefits under the Social Security Act. This matter was referred for hearing, if necessary, and submission of findings and recommendations pursuant to 28 U.S.C. §§ 636(b)(1)(B), 636(b)(3), and Fed. R. Civ. P. 72(b). The administrative record (Tr.) has been filed, and the appeal has been fully briefed and is ready for disposition. For the reasons set forth below, the undersigned recommends the Commissioner's decision be **AFFIRMED.**

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

## I. THE DECISION UNDER REVIEW

In a decision issued on December 21, 2012, the administrative law judge (ALJ) found that Plaintiff was not disabled under the Social Security Act and therefore not entitled to benefits. (Tr. 22-23). The ALJ found Plaintiff to have the following severe impairments:

> [C]hronic pain of her back and neck secondary to degenerative disc disease of her lumbar and cervical spinal regions; rheumatoid arthritis; tobacco abuse/dependence; sporadic migraine headaches, bipolar disorder Type 1 most recent episode depressive, without psychotic features; and post-traumatic stress disorder.

(Tr. 16). However, he found that none of these impairments met or equaled the criteria for any of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (Tr. 16-17). Upon continuing the sequential analysis, the ALJ found Plaintiff to have the residual functional capacity (RFC) to perform a range of semi-skilled, medium work, described as follows:

> [S]he can lift, carry, push, and pull 25 pounds frequently and up to 50 pounds at one time; stand and/or walk 6 hours in an 8-hour work day; sit 6 to 8 hours in an 8-hour work day; frequently grasp, feel, manipulate, twist, turn, reach, and work overhead with her upper extremity; frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, or scaffolds. She can understand, remember, and carry out simple and some complex job instructions and tasks; adequately make adaptations to working environments and adequately deal with changes in work processes and environment; and frequently relate to and interact with co-workers and supervisors and occasionally related to and interact with the general-public.

(Tr. 17).

Based upon this RFC finding, the ALJ found that Plaintiff was capable of performing her past relevant work as a light cleaner, waitress, prep cook, certified nurse's aide, and telemarketer. (Tr. 21). The ALJ made an alternative finding that even if Plaintiff could not perform her past relevant work, she could perform other jobs existing in the national economy. (Tr. 21-22). In reaching this alternative finding, the ALJ relied on the testimony of a vocational expert (VE) and, as a framework, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 21-22). The VE identified the following representative jobs that a person with Plaintiff's RFC and vocational factors could perform: surveillance systems monitor, document preparer, and final assembler. (Tr. 22). If Plaintiff's RFC were further limited by a limitation to tasks involving simple 1-2 step instructions and superficial contact with all people (co-workers, supervisors, and the general public), the VE testified that Plaintiff could still perform the job of surveillance systems monitor. (Tr. 22). The ALJ found that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles. *Id.*

**II. ERRORS ALLEGED ON APPEAL**

In this appeal, Plaintiff alleges reversal on five grounds. First, she alleges that the ALJ committed reversible error in reaching his finding regarding her credibility. ECF No. 11:4. Second, she claims the "ALJ committed reversible error by holding [her] to the wrong standards." ECF No. 11:7. Next she contends the ALJ "improperly addressed her allegation of pain." ECF No. 11:8. Fourth, Plaintiff claims the ALJ erred because he did not discuss her GAF scores in his decision. ECF No. 11:9. Fifth, and finally, Plaintiff

3

alleges that the ALJ's RFC finding is not supported by substantial evidence. ECF No. 11:10.

## III. DISCUSSION

### A. Credibility Analysis[1]

Plaintiff's first and third claims of error center on the ALJ's credibility analysis. In her first claim of error, Plaintiff contends that the ALJ failed to affirmatively link his credibility finding to "*proper* evidence." ECF No. 11:4. Plaintiff also makes the now familiar "*Bjornson*" argument—that the ALJ should have first evaluated Plaintiff's credibility and then formulated his RFC finding. ECF No. 11:5-6. She also notes one passage in the credibility analysis that is apparently from another decision; it refers to the claimant as "he" or "his" and references facts that are not contained in the exhibit cited. ECF No. 11:5-6. (citing Tr. 231-39). Plaintiff then alleges that the "ALJ engaged in more foolishness by his other credibility allegations." ECF No. 11:6. Plaintiff goes on to quote a passage from the decision in which the ALJ noted inconsistencies between Plaintiff's allegations and the medical evidence. ECF No. 11:7. Following this quote, the Plaintiff states only that what "the ALJ alleges to be inconsistencies are nothing even close." *Id.* However, the Plaintiff does not discuss any of the alleged inconsistencies.

Plaintiff also argues that the ALJ improperly addressed her pain: "[t]here are seven (7) areas of inquiry required by 96-7p and the ALJ wrote them all down, but Ms. Collins will defy the Commissioner to point to where the answers to numbers 2-7 are within the opinion." EFC No. 11:8.

---

[1] As noted by the Commissioner, Plaintiff's first and third claims of error both concern credibility, and so are addressed together in this part of the Report and Recommendation.

4

In response, the Commissioner generally refers to the factors to be considered in evaluating a claimant's credibility, but adds that an ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." ECF No. 12:3 (citing *Kepler v. Chater,* 68 F.3d 387, 390-91 (10th Cir. 1995)).

The Commissioner first addresses the alleged *Bjornson* error, claiming that it is not reversible error for the ALJ to recite his RFC finding before addressing the evidence relied upon in reaching the finding. The undersigned agrees that Plaintiff's *Bjornson* argument is without support in the Tenth Circuit. *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1170 (10th Cir. 2012) ("use of ... boilerplate is problematic only when it appears 'in the absence of a more thorough analysis.'") (quoting *Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004)). Less than a month ago, the Tenth Circuit specifically referenced a claimant's reliance on the Seventh Circuit decision in *Bjornson*, stating

> Relying on *Bjornson v. Astrue,* 671 F.3d 640, 645–46 (7th Cir. 2012), [claimant] urges this court to reverse because the ALJ's decision, apparently in accord with the standard decision template, sets forth the RFC finding before discussing the factors that go into making that finding, including the credibility determination. We decline to reverse on this ground.

*Romero v. Colvin*, Case No. 13-2200, 2014 WL 2210747 n. 1 (10th Cir. May 29, 2014). The undersigned finds that the use of the template in this case is not improper.

Next, the Commissioner concedes that the ALJ attributed activities allegedly contained in the Function Report to Plaintiff when the activities recited were not in that report, and so must have been from another claimant. ECF No. 12:4. However, the Commissioner argues that such activities are only one factor in the credibility analysis,

5

and because the ALJ is not required to address every factor in reaching his credibility finding, this is not reversible error. ECF No. 12:4. Furthermore, the Commissioner notes that elsewhere in the decision, the ALJ discussed the correct information from the Function Report. ECF No. 12:5 (citing Tr. 18). Although the excerpt from the Function Report noted by Plaintiff appears to have been inadvertently included in the decision, the undersigned finds that the ALJ's credibility analysis is nonetheless sufficient.

The Commissioner then responds to Plaintiff's conclusory argument that the ALJ engaged in "more foolishness" with regard to the ALJ's listing of inconsistencies between the medical evidence and Plaintiff's subjective complaints. Plaintiff provides no analysis of this argument, stating only that "[w]hat the ALJ alleges to be inconsistencies are nothing even close." ECF No. 12:5 (citing ECF No. 7). Despite Plaintiff's failure to develop this argument, the Commissioner devotes over three pages analyzing the part of the ALJ decision quoted by Plaintiff, showing that the records the ALJ cites do indeed show inconsistencies between Plaintiff's subjective complaints and the medical evidence. ECF No. 12:5-7.

In order to attain judicial review of an issue implicated by a final decision of the Commissioner, it is not enough to simply raise that issue. *Murrell v. Shalala,* 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) ("[P]erfunctory complaints fail to frame and develop an issue sufficient for judicial review."). This Court is unable to address contentions for which a claimant fails to develop the factual and legal bases for her arguments. *Threet v. Barnhart,* 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed"). Although the

Commissioner's attempt to respond to Plaintiff's two-sentence argument is commendable, Plaintiff has failed to develop her argument that the medical evidence cited by the ALJ is not inconsistent with her subjective complaints. Thus, the undersigned will not consider it as such would require speculation; it is not the office of the Court to develop arguments on behalf of a party.

Finally, in response to Plaintiff's challenge to show that the ALJ only addressed one of the seven credibility factors, the Commissioner notes that the ALJ considered the following: no requirement for long-term use of assistive devices; conservative treatment for her conditions; and Plaintiff's compliance and attendance with outpatient psychiatric therapies, which included medications. *See* ECF No. 12:7-8.

For the above reasons, the undersigned finds Plaintiff's first and third claims of error to be without merit.

### B. Holding Plaintiff to the "Wrong Standards"

In her second claim of error, Plaintiff argues that the "ALJ writes things that he says show that Ms. Collins is not disabled, but he is using the wrong standards." In the paragraphs that follow, Plaintiff pulls certain statements from the ALJ's decision and then makes the following "arguments": "[t]hose aren't the tests"; "[t]hat standard is complete error"; "[t]hat's not even close"; "[t]hat's a ridiculous standard, much less analysis"; "[t]his one's a mess"; "[c]an it be anything but error?." ECF No. 11:7-8.

Once again, the Commissioner attempts to respond to this point of error by interpreting it to allege that the ALJ held the Plaintiff to a higher standard in evaluating her impairments, and explained that such was not the case when considering the

balance of the decision in which the ALJ gave proper reasons for the functional limitations he accepted and those he did not. ECF No. 12:8-9.

The irony of Plaintiff's claim that the ALJ failed to provide "analysis" cannot go unnoticed. As mentioned above, a court simply cannot address contentions for which a claimant fails to develop the factual and legal bases for her arguments. Plaintiff's characterization of the ALJ's statements and findings, quoted above, when unaccompanied by any factual or legal analysis does not sufficiently develop her argument. Accordingly, it is recommended that Plaintiff's second claim of error be rejected.

### C. Addressing GAF Scores

Plaintiff argues that the ALJ committed reversible error in failing to address numerous GAF scores appearing in the record. ECF No. 11:9. While conceding that a low GAF score does not necessarily imply an inability to work, Plaintiff argues that the GAF scores in this case were over a long period of time and included scores from 40-52. *Id.* She claims the ALJ erred in not stating how he viewed and weighed this evidence. *Id.* She claims that the scores were in direct conflict with the ALJ's mental residual functional capacity finding and the assessment of the state agency consultant. ECF No. 11:9. As what can only be considered as an aside, Plaintiff also mentions that the ALJ and the state agency consultants minimized a mental health clinician's statement that Plaintiff's prognosis was "fair" if she continued in services. *Id.* at 10.

In response, the Commissioner argues that Plaintiff had the same GAF scores when she was still working, showing that they did not relate to her ability to work. ECF

No. 12:9. The Commissioner also argues that the Tenth Circuit has held that an ALJ is not required to discuss GAF scores in his decision. *Id.*

The ALJ has a duty to consider the GAF scores, but "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06–03p, 2006 WL 2329939 at *6. The ALJ need not discuss every piece of evidence in the record; it is enough if the ALJ discusses the evidence supporting his decision, "the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996). Here, the GAF scores were not significantly probative in light of the fact that the ALJ discussed the substantive findings contained in the same documents Plaintiff cites as containing the low GAF scores. *See* ECF No. 11:9.

For example, the ALJ stated that "even when the claimant [] experiences exacerbation of her depression and anxiety, the psychiatric treatment notes show that her overall psychiatric functions remain intact." (Tr. 20). He also noted that the ongoing medical treatment notes persistently show Plaintiff as exhibiting good grooming, full mental intact orientation with appropriate mood and affect, normal memory, and appropriate judgment. *Id.* The ALJ stated that Plaintiff's compliance with outpatient therapies has been less than ideal, but that when she is compliant she "experiences stability symptoms and good overall psychiatric functions." *Id.*

While it may have been preferable for the ALJ to have specifically discussed the GAF scores, it is enough that "the discussion of the evidence in the ... decision allows a ... subsequent reviewer to follow the [ALJ's] reasoning." SSR 06–03p, 2006 WL

2329939, at *6. Here, while the specifics must be (and easily are) inferred, the general outline of the ALJ's reasoning is clear: he must have been aware of the GAF scores as he relied on the substantive findings contained in the same medical records in which they appear.

Finally, as the Commissioner notes, "[T]he new *Diagnostic & Statistical Manual of Mental Disorders,* 16 (5th ed., 2013) has discontinued [GAF score] use because of 'its conceptual lack of clarity ... and questionable psychometrics in routine practice.'" *Krchmar v. Colvin,* 548 Fed. App'x 531, 534 n. 2 (10th Cir. 2013). The undersigned finds Plaintiff's fourth claim of error to be without merit.

### D. Medium Work

Plaintiff's fifth claim of error is that the ALJ failed to account for some of her severe impairments in reaching his RFC finding that she had the ability to perform at the medium exertional level. ECF No. 11:10-11. In particular, Plaintiff claims that the ALJ failed to consider her rheumatoid arthritis in her ankles, and chronic pain caused by lumbar and cervical disc disease. *Id.* She argues that every impairment must be considered by the ALJ in reaching his RFC finding, and asks "Where are they because the law requires they be included?" *Id.* at 10.

The Commissioner responds that Plaintiff's argument is not developed, leaving the Court to do considerable work. ECF No. 12:10-11. Next, the Commissioner notes that the ALJ also found that Plaintiff could perform her past sedentary and light jobs. ECF No. 12:11. Thus, regardless of the merits of Plaintiff's claim that she is unable to

perform work at the medium exertional level, the error is harmless as it would have no impact on the outcome of the appeal. *Id.* at 12.

The undersigned finds it unnecessary to consider Plaintiff's fifth error for the reason stated by the Commissioner: it would not affect the outcome of the appeal. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012) (ALJ's decision did not prejudice claimant because giving greater weight to opinion would not have led to a finding of disability). Accordingly, the undersigned finds no merit in Plaintiff's fifth claim of error.

## RECOMMENDATION

Having reviewed the evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED.**

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. See 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **July 14, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on June 30, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE